ELEBACH, Respondent, v. WEED, Appellant. (Supreme Court, Appellate Term. October 4, 1899.) Action by Clarence S. Elebach against Samuel R. Weed. From a judgment for plaintiff, defendant appeals. Reversed. Crevey & Rogers, for appellant. Herbert C. Smith, for respondent.

PER CURIAM. We have concluded that justice would be best promoted by a retrial of the issues in this case, so that the proof of the value of the services of the plaintiff and of the consulting surgeon might be more clearly established. Judgment reversed, and new trial ordered, with costs to the appellant to abide the event.

MacLEAN, J. (concurring). The plaintiff is a physician and surgeon, and claimed for his own services as such $67, and disbursements $3, making $70, and for the services of one Dr. George W. Roberts, whom he called to assist him, $175. The patient was defendant's wife. The plaintiff charged for 15 visits and consultations of himself, and for 6 visits of Dr. Roberts; giving as a reason for charging for the visits of Dr. Roberts at a higher rate that, according to a custom obtaining in the profession, a physician called in consultation is to be paid at a much higher rate than he would be for the same services if the case were his own. It is not claimed or shown by evidence that the defendant knew or was advised of any such custom. The pleadings were oral. The answer was a general denial, and counterclaim for damages resulting from malpractice, $500. The injury treated was a fracture of Mrs. Weed's right elbow joint, or, as technically expressed by the surgical witnesses, "a fracture of the olecranon process of the ulna." Dr. Elebach was called in immediately after the accident, on Novem-

ber 28, 1898, and was dismissed on December 16, 1898. The arm had then been in what was called the "permanent bandage" for one week, and was not seen again by a surgeon until December 29th, when the elbow joint was found to be rigid and immovable, and so it has remained ever since. The injury was the result of an accident, and upon its occurrence, November 28, 1898, the defendant took his wife in a carriage to the New Amsterdam Hotel, in this city, and, in response to his request to the person therein in charge to send for a physician at once, the plaintiff was called and appeared. He was the physician called by the hotel manager in all cases where such requests were made, and for this privilege and resulting practice he treated the hotel employés without charge. He was a stranger to the patient and the defendant. The trial was seemingly conducted with extreme laxity as to the observance of or insistence upon legal rules of evidence, but it was strenuously contested, and lasted two days. Eight physicians and surgeons were examined as witnesses. These eight gentlemen, five on the side of the plaintiff and three for the defendant, are to be quoted from their testimony as very positive in their opinions that the side calling them was right and the other side wrong. Those who were probably the most competent—certainly the most experienced—surgeons on either side differed from each other more radically and in detail than did the other opposing witnesses. The plaintiff was a graduated surgeon, as well as physician, and the questions in such cases are —first, whether he possessed the ordinary skill of persons acting as surgeons; and, second, whether he was negligent in not applying the skill so possessed in his treatment. It cannot be said, from the evidence, that there was want of skill on the part of the surgeon, Roberts, in the application of his treatment of this injury. Apart from any conflict of evidence, it appears that the plaintiff represented himself as possessing the requisite surgical skill, both by continuing to act in the case and by direct statement; for, when asked by the defendant, after an examination of the patient, whether he was able to take care of such a case, he said that he could, and that defendant need not alarm himself. But he admitted upon the stand that he later did not want to take the full responsibility himself, that he wanted a consultation with a competent man, and, again, that he felt the assistance of a competent man necessary. If he meant, when he said he was competent, that he was competent as a physician, he should have retired when the case was found to be wholly one for surgical treatment, or, upon such discovery, he should have remained only on the wishes of the patient and the defendant, after a full and fair explanation of the situation. The circumstances of the calling in of Dr. Roberts, "in consultation" or otherwise, are differently stated by the plaintiff and by the defendant and his wife. There is, however no suggestion anywhere in the case that either the patient or the defendant was ever informed that Dr. Roberts was to be more than a mere assistant, or that either of them was advised that the charges of the plaintiff's friend would be five times his own. If the plaintiff was

60 N.Y.S.—72

justified, by a custom obtaining in his profession, in calling in a consulting physician, and if that custom, furthermore, justified an additional charge of five to ten times the ordinary fee, because that the professional man consulted was called in consultation, and did not have charge of the case, the plaintiff should have followed the further professional custom, in employing consulting surgeons,—as described by the witnesses on both sides, and who substantially agree,—that the patient, if rational, is to be informed of the necessity or propriety of such consultation, and to be allowed, or at least asked, if he wishes to name the consulting surgeon to be called in, and such nominee of the patient is called, unless the attending physician objects to consulting with him. In this case it appears that, under that custom, an eminent surgeon, of whom the patient told him on his first visit, was her personal friend, and whose professional eminence and skill were lauded by all the surgeons, would and should have been employed,—perhaps with the relief of the plaintiff from further attendance. We may not speculate upon possible results of treatment which this patient did not receive, but there are certain principles of law applicable to the facts of the case, which should result in reduction of the judgment appealed from or a new trial. The evidence established the fact that the defendant was misled when he relied, as did also the patient, upon the plaintiff's assertions respecting his competency, and that the charges in the bill were increased thereby. There was no justification, by custom or otherwise, in plaintiff's employment of Dr. Roberts, without a frank and full statement of the situation to the patient and the defendant, and learning their wishes concerning the professional person to be brought in. There cannot be properly applied to the facts shown here any custom multiplying ordinary professional charges five to ten times under the shield of a layman's ignorance, because it is subversive of justice that charges should be so largely increased by a custom not made known at all to the patient or to her husband. This recovery of the plaintiff's full demand not only makes no allowance or recoupment whatever for negligence, but bars absolutely any action against plaintiff or Roberts for negligence or malpractice. Schopen v. Baldwin, 83 Hun, 234, 31 N. Y. Supp. 581; Blair v. Bartlett, 75 N. Y. 150. A case involving very similar facts resulted in an action which was long in the courts of this state and resulted in the final affirmance by the court of appeals of a judgment for damages for such malpractice. The opinions written therein contain a volume of law applicable to the facts here. From the opinions in that case (Carpenter v. Blake, 60 Barb. 490, 2 Lans. 206, 10 Hun, 358, 50 N. Y. 696, and 75 N. Y. 12), and from that in Du Bois v. Decker, 130 N. Y. 325, 29 N. E. 313, it may be seen that a surgeon holding himself out as possessing competent skill is strictly accountable for his acts if he has not such skill, or if his misrepresentations as to his competence injuriously misled his patient, and that, if he fails in any of these particulars, he is not entitled to the benefits which would inure to an honest, capable, skillful, diligent, and faithful surgeon, who has performed his whole duty.

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.